**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PATRICE L. MCGRIFF,

Plaintiff,

vs. Case No. 3:16-cv-1074-J-34JRK

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

Defendant.
_______________________________________/

## REPORT AND RECOMMENDATION[1]

### I. Status

Patrice L. McGriff ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("Administration('s)") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of problems with her kidney, "bad knees," pain in her shoulder and back, difficulty sleeping, and "depression." Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed November 10, 2016, at 109, 117, 127, 137, 246. On October 4, 2012, Plaintiff filed applications for DIB and SSI, alleging an onset disability date of June 6, 2010. Tr. at 220-21 (DIB), 222-27 (SSI). Later, Plaintiff amended the alleged onset disability date to January 1, 2011. Tr. at 241. Plaintiff's applications were

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

denied initially, see Tr. at 109-16, 125, 153-58 (DIB), 117-24, 126, 159-65 (SSI), and were denied upon reconsideration, see Tr. at 127-36, 147, 166-71 (DIB), 137-46, 148, 172-77 (SSI).

On July 2, 2014, an Administrative Law Judge ("ALJ") held a hearing, during which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 50-102. At the time of the hearing, Plaintiff was fifty (50) years old. Tr. at 54. Following the hearing, the ALJ issued a Decision on October 6, 2014, finding Plaintiff not disabled through the date of the Decision. Tr. at 30-44.

The Appeals Council then accepted additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 5-6; see Tr. at 319-29 (brief). On June 20, 2016, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On August 24, 2016, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), by filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three issues on appeal: (1) "[w]hether the ALJ erred in determining that [Plaintiff] has the residual functional capacity [("RFC")] to perform light work with additional non-exertional limitations after ignoring certain medical conditions, failing to weigh the opinions of [Plaintiff's] treating physicians, and failing to appropriately consider [Plaintiff's] use of a cane"; (2) "[w]hether the ALJ properly relied on the testimony of the [VE] after posing and relying on a hypothetical [that] did not accurately reflect [Plaintiff's] limitations"; and (3) "[w]hether the ALJ erred in determining that [Plaintiff] has the [RFC] to perform [] light work with other non-exertional limitations after failing to adequately address [Plaintiff's]

credibility." See Plaintiff's Brief Addressing the Merits of Appeal (Doc. No. 18; "Pl.'s Br."), filed February 27, 2017, at 2-3, 15-21 (argument as to first issue), 21-23 (argument as to second issue), 23-25 (argument as to third issue). On May 1, 2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") addressing the issues raised by Plaintiff. After a thorough review of the entire record and consideration of the parties' respective filings, the undersigned recommends that the Commissioner's final decision be reversed and remanded for further administrative proceedings.

## II. The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 32-44. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since January 1, 2011, the amended alleged onset date." Tr. at 32 (emphasis and citation omitted). At step two, the ALJ found that "[Plaintiff] has the following severe impairments: a history of morbid obesity, history of sleep deprivation, history of hypertension, history of depressive disorder with some anxiety." Tr. at 32 (emphasis and citation omitted). At step three, the ALJ ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 33 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

> [Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) involving lifting and carrying 20 pounds occasionally and 10 pounds or less more frequently and sitting, standing and walking for at least 6 hours each in an 8-hour workday. Pushing and pulling of arm, hand or foot/pedal controls can be done occasionally. [Plaintiff] can occasionally climb ramps and stairs, but is precluded from climbing ropes, ladders and scaffolding. All other postural activities can be done occasionally. In terms of manipulative activities within the above identified weight limits, [Plaintiff] has no limitation of function for reaching in all directions, handling, fingering, and feeling. [Plaintiff] has no limitation of function in regard to her ability to see, speak and hear. [Plaintiff] must be kept away from unprotected heights and work around dangerous, moving machinery. She should work in a temperature-controlled environment without exposure to concentrated amounts of atmospheric pollutants such as dust, smoke, fumes, chemicals, etc. From a non-exertional standpoint, [Plaintiff] is capable of performing, remembering, understanding and carrying out simple, rote and repetitive tasks done in a work environment that does not change from one day to the next, so that what is done on Monday is done the rest of the week. There can be no production goals or quotas. [Plaintiff] is able to interact occasionally with others.

Tr. at 34 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that "[Plaintiff] is capable of performing her past relevant work as a maid and short

order cook."[3] Tr. at 41 (emphasis omitted); see Tr. at 42. The ALJ then proceeded to make alternative findings regarding the fifth and final step of the sequential inquiry. Tr. at 42-43. At step five, after considering Plaintiff's age ("46 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform," Tr. at 42, including "Marker," "Routing Clerk," and "Office Helper," Tr. at 43.[4] The ALJ concluded that Plaintiff "has not been under a disability . . . from January 1, 2011, through the date of th[e D]ecision." Tr. at 44 (emphasis and citation omitted).

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as

---

[3] Plaintiff also has past work as a babysitter and a school cafeteria cook. Tr. at 42.

[4] The ALJ also recognized the VE's testimony that even adding additional limitations to the RFC of sitting, standing, and walking only four hours per workday and the opportunity to alternate positions between sitting and standing and walking every thirty minutes, Plaintiff could still perform the job of office helper, and she could perform the following other jobs: "Collator Operator," "Silver Wrapper," and "Assembler, Electrical Accessories I." Tr. at 43.

adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The undersigned addresses Plaintiff's first issue, regarding the RFC and the ALJ's handling of various medical records from her treating physicians at Shands Jacksonville ("Shands"), and concludes that the matter must be reversed and remanded for further proceedings. Given this conclusion, and given that reconsideration of the RFC and the Shands records may impact the findings related to Plaintiff's remaining arguments on appeal, it is unnecessary to substantively address Plaintiff's remaining arguments. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues). Indeed, Plaintiff's second issue relies entirely on the Court finding error in the ALJ's formulation of the RFC: Plaintiff argues that because of the flawed RFC, the ALJ erred in

presenting a hypothetical to the VE that does not include all of her impairments. See Pl.'s Br. at 21-23. And Plaintiff's third issue addresses the ALJ's credibility finding—but the ALJ evidently only found Plaintiff incredible to the extent her testimony conflicted with his RFC finding. See Pl.'s Br. at 23-25; Tr. at 36. Thus, on remand, the Administration should be instructed to reconsider Plaintiff's remaining arguments on appeal if necessary.

**A. Parties' Arguments Regarding RFC and Shands Records**

Plaintiff's challenge to the ALJ's formulation of the RFC focuses on the medical records from Shands, where Plaintiff received the vast majority of her medical treatment. See Pl.'s Br. at 15-21. Plaintiff argues that in evaluating the Shands records, the ALJ impermissibly failed to state the weight they were given; the ALJ "ignor[ed] certain medical conditions" that are documented in the Shands records; and the ALJ "fail[ed] to appropriately consider [Plaintiff's] use of a cane." Id. at 15.

Responding, Defendant acknowledges that the ALJ "did not expressly state a weight he was giving these medical records." Def.'s Mem. at 5. Nevertheless, argues Defendant, the ALJ discussed the records enough to show that he "extensively considered" them. Id. at 7. Defendant also acknowledges that the Shands records contain at least one medical diagnosis, diabetic neuropathy, that the ALJ did not consider, but Defendant contends that the diagnosis does not mean Plaintiff is more limited than the ALJ found in the RFC. Id. at 10. Finally, as to the use of a cane or assistive device, Defendant argues that the Shands records do not provide information about the circumstances for which such a device is needed, and therefore the ALJ properly rejected the contention that a device is medically necessary. Id. at 9 (citations omitted).

**B. Applicable Law**

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded to each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical

evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to the opinion of a treating physician or psychiatrist,[5] the Regulations instruct ALJs how to properly weigh such an opinion.[6] See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440

---

[5] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

[6] Treating sources' opinions are statements from treating physicians, treating psychologists, and the like that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, what the claimant can still do despite the impairment, and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2); 20 C.F.R. § 404.1513(a).

(11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

Regarding the use of a hand-held assistive device, Social Security Ruling ("SSR") 96-9p states:

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether

> all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). . . .
>
> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

SSR 96-9P, 1996 WL 374185, at *7 (SSA 1996).

**C. Discussion**

Here, as noted, Plaintiff's main treating source is Shands. The ALJ did discuss the Shands records in some detail (often not attributing them to Shands), but he did not state any weight assigned to them. Tr. at 36-41. The only statement in the Decision regarding "opinion evidence" from treating sources indicates that "the record does not contain any opinions from treating or examining physicians indicating [Plaintiff] is disabled or even has limitations greater than those determined in this decision." Tr. at 41.

Defendant, relying principally on Hunter v. Commissioner of Social Security, 609 F. App'x 555, 556 (11th Cir. 2015), contends that because "the ALJ accurately summarized the information from Shands [] in the body of his decision" and "considered Plaintiff's condition as a whole," the ALJ's Decision should be upheld, Def.'s Mem. at 12 (citations omitted). In Hunter, the United States Court of Appeals for the Eleventh Circuit in an unpublished decision determined that an ALJ's failure to state the weight assigned to treating physicians' notes was harmless. Hunter, 609 F. App'x at 557. The Eleventh Circuit therefore affirmed. Id.

The ALJ in Hunter had "summarized" two treating physicians' notes without referring to them by name. Id. The Eleventh Circuit concluded that the ALJ's decision "demonstrate[d] that the [ALJ] considered [the plaintiff's] medical condition as a whole." Id.

(citation omitted). Further, the Eleventh Circuit observed that the treating physicians at issue "did not offer opinions as to how [the plaintiff's] medical conditions would impact his ability to perform his past relevant work," while "the doctors upon whom the [ALJ] expressly relied specifically opined as to [the plaintiff's] work-related abilities in light of the existing medical conditions." Id. (citation omitted)

For two main reasons, this case is distinguishable from Hunter, and the ALJ here committed error necessitating remand in analyzing the Shands records and formulating the RFC. First, as Defendant concedes, the ALJ missed at least one diagnosis from the Shands records that could impact the RFC determination: diabetic peripheral neuropathy. See, e.g., Tr. at 649, 666, 779, 918. This diagnosis appears inconsistent with the ALJ's finding of "fairly benign musculoskeletal and neurological assessments documented throughout the record," Tr. at 37-38, a finding that the ALJ relied upon in forming the RFC, Tr. at 34. Thus, unlike in Hunter, the undersigned is not convinced that the ALJ's Decision here demonstrates he considered Plaintiff's medial condition as a whole. See Hunter, 609 F. App'x at 557.

Second, the ALJ's rejection of Plaintiff's contention that she needs an assistive device to ambulate is contrary to the conclusions in the Shands records. In finding Plaintiff failed to establish the need for an assistive device, the ALJ stated:

> [Plaintiff] testified that she required the use of a walker and cane and treatment records indicate a walker was prescribed with no additional information of the circumstances or length of time the use of a walker was considered necessary. To find that a hand held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations, distance and terrain and any other relevant information). As the medical treatment notes fail to provide this additional information, and given [Plaintiff's] fairly benign musculoskeletal and neurological assessments documented

> throughout the record, the undersigned finds that the totality of the medical evidence fails to support that the use of any hand held assistive device is medically necessary.

Tr. at 37-38 (citations omitted). Yet, a review of the administrative transcript reveals that the Shands records continuously document both the need for an assistive device and Plaintiff's actual use of one. While the Shands records may not contain great detail about the circumstances for which it is needed, they overwhelmingly support the contention that an assistive device is required. See, e.g., Tr. at 347-48 (January 8, 2010 note indicating Plaintiff complained of syncope and "ambulates with a cane"); Tr. at 503, 516 (duplicate) (April 15, 2010 note indicating Plaintiff "continued to walk with the aid of a cane"); Tr. at 491, 499-500 (July 30, 2010 note indicating Plaintiff has "[j]oint pain" and "[d]ifficulty walking"); Tr. at 551-52 (November 1, 2010 note indicating Plaintiff "continues to have episodes of presyncope as well as vertigo with headaches" and "has a normal steady gait" but "ambulate[s] with the use of the cane"); Tr. at 692 (March 17, 2011 note indicating Plaintiff "uses a cane for walking and excessive daytime fatigue"); Tr. at 563 (May 25, 2011 note stating Plaintiff "had an episode of syncope while walking from the car to her uncle's doorstep" and "injure[d] her arm"); Tr. at 724 (October 3, 2011 psychotherapy note stating Plaintiff "walks slowly with a cane due to obesity"); Tr. at 398 (March 2, 2012 note indicating Plaintiff has "osteoarthritis (ambulates with cane)"); Tr. at 704 (August 7, 2012 note indicating a prescription for a "[r]olling walker with seat" due to a diagnosis of "severe [osteoarthritis] / impaired ambulation"); Tr. at 788 (October 2, 2012 note indicating Plaintiff had "a slow, arthralgic gait, using crutches for assistance"); Tr. at 650 (October 12, 2012 note indicating a prescription for a "[r]olling walker with seat" due to a diagnosis of "severe [osteoarthritis] / impaired

ambulation" and prescriptions for "bilateral patella centralizing braces") (some capitalization omitted); Tr. at 654 (renewing prescriptions); Tr. at 661, 772 (duplicate) (January 14, 2013 note indicating continued need for walker and knee brace); Tr. at 741-42 (February 14, 2013 note indicating continued need for walker and knee brace); Tr. at 779-80, 783, 799-800 (duplicate) (April 5, 2013 note indicating continued need for walker and knee brace and noting Plaintiff ambulated "w/cane"); Tr. at 758 (May 1, 2013 note indicating continued need for walker and knee brace); Tr. at 794-95 (May 28, 2013 note indicating continued need for walker and knee brace); Tr. at 735-36, 821-22 (duplicate) (June 6, 2013 note indicating continued need for walker and knee brace); Tr. at 789-90 (June 11, 2013 note indicating continued need for walker and knee brace); Tr. at 752 (June 20, 2013 note indicating continued need for walker and "physical therapy referral for knee rom and pain and also for balance"); Tr. at 815-17 (September 6, 2013 note indicating continued need for walker and noting on examination, Plaintiff was "in mild distress [and] use[d a] cane for ambulation"); Tr. at 809-10 (December 5, 2013 note indicating continued need for walker); Tr. at 805 (December 19, 2013 note indicating continued need for walker); Tr. at 861, 863 (January 15, 2014 note indicating continued need for walker); Tr. at 852, 854 (February 12, 2014 note indicating continued need for walker); Tr. at 912-13 (April 9, 2014 note indicating Plaintiff had "difficultly walking" and was "using [a] walking cane and walker for assist[ance]") (capitalization omitted). Accordingly, the ALJ's outright rejection of any medical need for an assistive device is not supported by substantial evidence in the record.[7]

---

[7] The undersigned recognizes that the ALJ did question the VE during the hearing about the extent to which his testimony would change if an assistive device were required. Tr. at 98-99. The VE, however, testified that the jobs would be eliminated if both of the person's hands are not able to be (continued...)

In sum, although the Shands records do not provide specific RFC assessments, they do provide the most detail in the administrative transcript about Plaintiff's conditions and their effects. The ALJ's Decision does not convince the undersigned that the Shands records were adequately considered. Further, the ALJ's determination that an assistive device is not medically required is not supported by substantial evidence.

## V. Conclusion

For the foregoing reasons, it is

**RECOMMENDED THAT**:

1. The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

   (A) Reconsider the Shands Jacksonville records and Plaintiff's RFC;

   (B) Ensure that the other issues raised in this appeal are appropriately addressed, if necessary; and

   (C) Take such other action as may be necessary to resolve this matter properly.

2. The Clerk be further directed to close the file.

---

[7](...continued) used. Tr. at 98. Then, the ALJ asked about whether the available jobs would be affected if the person only used an assistive device to walk "from one place to the other, not if they're just standing in one place." Tr. at 98. The VE, in response to that question, testified that the percentage of jobs available would be significantly decreased, up to ninety percent. Tr. at 99. The ALJ did not make any alternative step five findings in the Decision with respect to the jobs available if an assistive device were required. Tr. at 43.

3. Plaintiff's counsel be advised that, in the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on August 1, 2017.

James R. Klindt
**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:

Hon. Marcia Morales Howard
United States District Judge

Counsel of record